ETHEL S. BALTZELL, *et al.* v. D. P. DANIEL, *et al.*

149 So. 639.

Division A.

Opinion Filed July 6, 1933.

Rehearing Denied August 9, 1933.

*James H. Finch,* for Appellant;

*Moses Guyton,* for Appellees.

ELLIS, J.—This case involves the question of the effect of a partition of lands by decree of the court under the statute upon a mortgage given by one of the owners upon

his undivided interest in the entire tract where neither the mortgagee nor his assigns were parties to the suit in partition.

In December, 1922, D. P. Daniel, W. J. Daniel and the heirs of Mrs. Floye Milton were tenants in common of six separate and distinct parcels of land; the two Daniels each owning an undivided one-third interest and the heirs of Floy Milton together owning an undivided one-third interest.

The property may be described as appellants' solicitor has described it as follows: Parcel A. Two brick stores in one building; Parcel B. A lot and brick building called the creamery building; Parcel C. A lot and brick building called the Daniel Stable building; Parcel D. Vacant lots; Parcel E. a one-half acre lot, and Parcel F. a two hundred and forty acre tract of land known as "Artie Sims' place." All the property except Parcel "F" lies in the City of Marianna. Parcel "F" lies between that city and Blue Springs.

On December 28th, 1922, D. P. Daniel executed a mortgage to M. L. Dekle to secure the payment of a promissory note in the sum of five thousand dollars payable to Dekle or order as follows: two thousand dollars April 1st, 1923, and three thousand dollars January 1st, 1924. In February, 1928, Mrs. Ethel Baltzell, wife of N. A. Baltzell, had acquired the note on which was due the sum of three thousand dollars with interest from July 1, 1926. The note and mortgage was assigned and transferred to her on December 7, 1926.

The mortgage was upon D. P. Daniels' undivided one-third interest in the lands herein described as Parcels A., B., C. and D. The land is particularly described in the mortgage and solicitors for both appellants and appellees agree that such description embraces the lots as above described. All the property owned by D. P. and W. J. Daniel

and the heirs of Mrs. Floy Milton in common was not covered by the mortgage.

Mrs. Baltzell and her husband on February 23rd, 1928, exhibited their bill in chancery in the Circuit Court for Jackson County to enforce the mortgage lien. The defendants named were D. P. Daniel and wife and W. J. Daniel and wife and M. L. Dekle.

On May 12, 1926, D. P. Daniel and wife executed a mortgage to W. W. Wester on the lot described as Parcel "C" purporting to cover the entire estate.

On August 27th, 1923, W. J. Daniel and wife executed and delivered to M. L. Dekle a mortgage to secure the payment of a four-thousand-dollar debt to Dekle upon the same land as that described in the mortgage of D. P. Daniel to Dekle dated December 28th, 1922, and now owned by Mrs. Baltzell. The mortgage of W. J. Daniel to Dekle covered W. J. Daniel's undivided one-third interest in the property.

On March 16th, 1925, W. J. Daniel and wife executed and delivered to M. L. Dekle a mortgage to secure the payment of a debt for twenty-five hundred dollars. The mortgage covered the entire estate in the north half, of Parcel A and all of Parcel B.

Now, in the year 1922, presumably prior to the date of the mortgage from D. P. Daniel to M. L. Dekle, dated December 28th, 1922, and later acquired by Mrs. Baltzell, a suit for partition was begun in the Circuit Court for Jackson County by the heirs of Mrs. Floy Milton against W. J. and D. P. Daniel. Two of those complainants were minors. The land sought to be partitioned was that herein first described as "Parcels A, B, C, D, E, and F." No order was made in the cause until December 3rd, 1923. It does not appear that a *lis pendens* notice was filed. The order or decree set off to the parties in severalty the lands sought

to be partitioned. To D. P. Daniel was allotted Parcel C
and Parcel F; to W. J. Daniel the north half of Parcel A
and Parcel B; to the Milton heirs the north half of Parcel A,
Parcel D and Parcel E. It is agreed by solicitors for the
parties that the court erred in allotting the north half of
Parcel A to both the Milton heirs and W. J. Daniel.

In December, 1926, W. W. Wester began a suit to fore-
close a mortgage on Parcel C executed by D. P. Daniel in
May, 1926, upon the entire interest in that parcel. Mrs.
Baltzell and her husband and others were defendants. The
parcel was included in the Baltzell mortgage. Mrs. Baltzell
in her answer set up the mortgage held by her, prayed for
its enforcement as to Parcel C, and the declaration by the
court of a first and prior lien over the Wester mortgage as
to an undivided one-third interest in that parcel. In that
suit the court decreed that there was due to Mrs. Baltzell
from D. P. Daniel as of February 1, 1928, the sum of
$3000.00 as principal, $380.00 as interest and $363.00 as
attorneys' fees, making a total sum of $3743.00. The prop-
erty was ordered to be sold on March 5th, 1928.

It is claimed in behalf of Mrs. Baltzell, in the suit begun
by her in February, 1928, to enforce the mortgage held by
her, that the amount adjudged to be due to her in the
Wester foreclosure proceeding was definitely settled by the
court and its decree in that regard is *res adjudicata;* that in
that suit Mrs. Baltzell was adjudged to hold a first and
prior lien over that of Wester as to "one-third interest" in
Parcel C, and it was adjudged that Wester had a prior lien
upon a two-thirds interest in that lot; that a one-third part
of the sum at which the land will be sold under the Wester
decree will not be sufficient to pay the amount adjudged to
be due to Mrs. Baltzell in that suit; that the mortgage held
by her is a superior lien upon an undivided one-third inter-
est owned by D. P. Daniel on December 28, 1922, in and

to all of the lands covered by her mortgage which were Parcels A, B, C, and D (Parcels E and F were not covered by that mortgage), that such lien is superior in dignity to any claim of M. L. Dekle or any of the other parties to the suit who are D. P. and W. J. Daniel and their wives.

The prayer is that the court shall decree that there is due to Mrs. Baltzell the amount adjudged in the Wester suit to be due to her as of January 1, 1928, and that such sum is secured by the mortgage held by her; that the lien of that mortgage exists upon an undivided one-third interest in Parcels A, B, C, and D, as held by D. P. Daniel, the mortgagor, in December, 1922, when the mortgage was executed by him to Dekle; that D. P. Daniel be required to pay over to Mrs. Baltzell that amount due by him by a certain day and in default thereof that he and all other defendants and persons claiming under them be foreclosed of any right or equity of redemption and that the lands be sold at public auction for cash and the proceeds applied to the payment of the debt.

Notice of *lis pendens* in that suit was filed February 23, 1928, the same day on which the suit was begun. All the defendants answered in April, 1928. It avers that no sale has been made of the Parcel C in the Wester foreclosure proceedings, but a sale was made of the property in a foreclosure proceeding by A. G. Wetmore *et al.* v. D. P. Daniel *et al.* That sum realized was $7000.00 of which $5798.63 was paid over to W. A. Register who was the Special Master appointed by the Court in the Wester suit to make sale of the property and the sum of $1120.49 was paid over to A. G. Wetmore and F. M. Golson, Receiver. It is asserted in behalf of the defendants in the answer that Mrs. Baltzell has no right under the mortgage held by her to subject an undivided one-third interest in Parcels A, B, C, and D

to the payment of the debt secured by the mortgage held by her or any balance that may be due on that debt.

There is set up in the answer the mortgage of August 27, 1923, from W. J. Daniel to M. L. Dekle covering the same parcels as covered by the D. P. Daniel mortgage to Dekle dated December 28, 1922, and now held by Mrs. Baltzell. It is averred that $3000. is due on the second mortgage from Daniel to Dekle; that when the partition suit was begun M. L. Dekle owned both mortgages. It is averred that after the conclusion of the partition suit, M. L. Dekle, at the request of the Milton heirs, executed a cancellation of both mortgages in so far as they appeared to be liens on the property allotted to the Milton heirs. It is averred that he executed such cancellation of both mortgages because he believed that after the conclusion of the partition suit those mortgages were liens only upon the property allotted to D. P. and W. J. Daniel in that suit; That such was the understanding between all the parties to the partition suit with which M. L. Dekle was "thoroughly familiar" assisted and advised in the matter and the arrangement and understanding were satisfactory to all parties. As stated elsewhere the partition suit was concluded by the decree of December 3, 1923. It does not appear that Mrs. Baltzell acquired the mortgage from D. P. Daniel to M. L. Dekle prior to the execution by Dekle of the cancellation of the sale as to all parcels of land allotted to the Milton heirs, but on the contrary the acquisition of the mortgage by her was on December 7, 1926, three years after the decree in the partition suit and after Dekle had cancelled it as to all lands allotted to the Milton heirs in that suit.

It is averred that N. A. Baltzell, the husband of Mrs. Baltzell, acting for her in acquiring the D. P. Daniel mort-

gage to Dekle, knew of the partition suit and believed that the D. P. Daniel mortgage was a lien only upon the parcel of land allotted to him in the partition suit; that Dekle was not a party to the Wester foreclosure and that he, Dekle, is the owner of a mortgage from W. J. Daniel dated March 6, 1925, on lands allotted to W. J. Daniel and on which there is due the sum of $2500. So the answer denies that the D. P. Daniel mortgage on December 28, 1922, to M. L. Dekle and now owned by Mrs. Baltzell is an existing lien upon any property other than that which was allotted to D. P. Daniel in the partition suit.

The answer was permitted to be amended by averring that the South half of Parcel A was involved in the partition suit and was allotted to W. J. Daniel; that the final decree in that suit, which shows that an agreement had been arrived at between the parties as to the division of the property on which agreement the decree rested and that the decree shows it was the purpose of the court to allot the south half of Parcel A to W. J. Daniel and the north half of that parcel to John Milton, Jr.

In this state of the pleadings testimony was taken by Lona S. Horne, appointed by the court as special examiner.

A brief summary of the question as presented by the pleadings is that the D. P. Daniel mortgage to M. L. Dekle of December, 1922, was a valid lien when executed upon an undivided one-third interest in lands described as Parcels A, B, C and D; that W. J. and D. P. Daniel and the heirs of Milton owned in common the land described as Parcels A, B, C, D, E and F; that a partition suit was begun prior to the date of the Daniel mortgage to Dekle; that the suit was concluded by a decree on December 3, 1923, at which time M. L. Dekle was owner of the mortgage; that he then cancelled the mortgage as to all lands

allotted to the Milton heirs in so far as it affected D. P. Daniel's interest in such parcels prior to the decree; that Mrs. Baltzell acquired the mortgage three years afterwards with full knowledge through her agent, her husband, that the mortgage had been cancelled on all parcels not allotted to D. P. Daniel.

Now, in the partition decree D. P. Daniel was allotted Parcel C, which was included in the mortgage, and Parcel F, the two hundred and forty acres of land lying between Marianna and Blue Springs, which was not included in the mortgage. That would leave, according to the defendant's contention, the lien of the D. P. Daniel mortgage to Dekle, which mortgage is now owned by Mrs. Baltzell, covering the entire estate held by D. P. Daniel in Parcel C and in Parcel F, if the agreement between the parties in the partition suit had the effect of extending the lien of the mortgage to Parcel F, either by virtue of the agreement or by estoppel operating against D. P. Daniel.

The complainant says that the lien of the D. P. Daniel mortgage to Dekle, now owned by the complainant, was unaffected by the partition suit and remains notwithstanding the decree in that suit a lien upon the undivided one-third interest of D. P. Daniel in the plats A, B, C, D, described in that mortgage because neither she nor Dekle was a party to that suit; that the decree left undisposed of the south half of Parcel A, that the subsequent amendment of the decree including the south half of Parcel A was void as to her because of lack of notice to her; that the lien of the mortgage was not extended to Parcel F by such decree because D. P. Daniel's one-third interest in that parcel was not covered by his mortgage to Dekle and that the decree in the Wester foreclosure suit recognized and in effect adjudicated complainant's lien to be a superior lien upon the undivided one-third interest only in Parcel C which was in

effect an adjudication that the lien of the mortgage continued in force upon the undivided interest of D. P. Daniel in the parcels covered by the mortgage to Dekle notwithstanding the partition decree.

On July 23, 1930, the Chancellor rendered his decree in this cause in which he held that the equities were with the defendants, that the complainant was not entitled to the relief prayed and that the bill of complaint should be dismissed.

From that decree Mrs. Baltzell and her husband appealed.

Mrs. Baltzell acquired the mortgage and debt which it was given to secure after maturity of the note and about a year after Mrs. Dekle had executed a release of the lien as to all property set apart in the partition decree to the Milton heirs. Dekle and his assignee therefore were bound by that release, which was duly recorded about a year before Mrs. Baltzell acquired the mortgage. The release, however was confined by its terms to the lands set apart by the decree to the Milton heirs. Therefore as to the interests of D. P. and W. J. Daniel, as they were established or set apart in Parcels A, B and C by the decree, the release was not effective. So the lien of Mrs. Baltzell's mortgage continued upon the one-third undivided interest of D. P. Daniel in those parcels and the release affected D. P. Daniel's undivided interest in Parcel D only. Now, according to the decree, as amended, the south half of Parcel A was allotted to W. J. Daniel. Complainants contend that the amendment of the decree was ineffective as to the north half of Parcel A which in the original decree appeared to have been set apart to John Milton, Jr., and W. J. Daniel. The amendment was made by order of the court dated July 23, 1928.

It appears from the pleadings that the Baltzell mortgage was enforced in so far as it applied to D. P. Daniel's un-

divided one-third interest in Parcel C and the indebtedness reduced by the proceeds from the sale of the property as ordered in the Wester foreclosure proceeding by the sum of. one thousand five hundred and seventy-eight dollars and ninety-six cents. It appears that the money has been received by solicitor for Mrs. Baltzell. The Baltzell mortgage is still a lien upon and unforeclosed as to the undivided interest of D. P. Daniel in the south of Parcel A and all of Parcel B which under the partition decree was allotted to W. J. Daniel. This was in effect the court's ruling in the Wester foreclosure suit and the proceedings in behalf of the City of Marianna to enforce paving liens.

As to the proposition that the decree in partition had the effect to shift the lien of the Baltzell mortgages to such parcels only as were described in that mortgage and allotted. to D. P. Daniel, which would shift the lien of the mortgage to the entire estate in Parcel C and remove it from Parcels A, B, and D, we think that it is not applicable in this case. In the first place, the decree of partition, while it was a judicial order, was in fact but a judicial affirmance or confirmation of an agreement between the owners of the land by which they affected a partition of it among themselves. Procuring the decree was merely an arrangement between the parties, the tenants in common, by which they effected a division of the land. M. L. Dekle, who then owned the mortgage and who seems to have been informed of the agreement, advised it and consented to it, agreed that the lien of the mortgage should be lifted only as to the lots or parcels that should be allotted to the Milton heirs. Dekle was not a party to the partition proceedings nor to the agreement by which the division was made, although he advised and gave counsel to the parties, but agreed that the lien of his mortgage should be lifted only as it applied to the lots which should be allotted to the Milton heirs. That

arrangement seemed to be satisfactory to both D. P. and W. J. Daniel. There is no statute in this State which provides that a lien upon an undivided interest becomes a charge only on the share of the mortgagor assigned to him in a partition suit. See Espalla v. Touart, 96 Ala. 137, 11 South. Rep. 219.

It has been held that a mortgagee holding a mortgage upon an undivided interest in an estate is a necessary party to a suit to partition the lands. Chaney v. Ricks, 168 Ill. 533, 48 N. E. Rep. 75.

In Kentucky a contrary doctrine is held. In that State it has been held that when one who takes a lien upon an undivided interest in land takes the lien with the knowledge and understanding that his lien will follow and remain upon the particular interest assigned to the mortgagor in the partition suit. It is also further held under a partition statute similar to ours that a mortgagee is not a necessary party in a partition suit by one or more of the tenants in common.

See Barry v. Baker, (29 Ky. Law 573) 93 S. W. Rep. 1061.

The same rule obtains in the State of Maine. Randall v. Mallett, 14 Me. 51.

In Massachusetts, where the mortgagee is deemed to have an interest in the lands as against the mortgagor, a partition of the land does not affect the interest of the mortgagee. Bradley v. Fuller, 23 Pick. (Mass.) 1.

The general rule is as expressed in Jackson v. Pierce, 10 Johns. 414, (9 N. Y. Com. Law 113) that where a mortgage is given upon an undivided part or share in a large tract of land and on partition the right or share of the mortgagor is allotted in severalty the mortgage will be considered as attached to the part so assigned as the share of the mortgagor and will cover his whole interest therein. See

also Reed v. Fidelity Ins. Trust & Safe Deposit Co., 113 Pa. 574, 6 Atl. Rep. 163.

But the doctrine thus generally expressed is modified by an equitable consideration for persons not given an opportunity to be heard. Equity is not inclined to despoil the security of persons who have been given no opportunity to be heard on the matter of their security. But even in those jurisdictions where the rule is applied, and in which it is held that the mortgage lien is divested where the mortgagor is allotted no part but there is an owelty of partition the lien of the mortgage is held to attach to the owelty. In all cases due regard is paid to the consideration of fairness and equality of division of shares. It is doubtless true that the right of tenants in common to make partition and enjoy all its incidents is paramount to the right of the lien creditor against any one of the tenants. See the Reed v. Fidelity Ins. Trust & Safe Deposit Co. case, *supra.* Yet such right cannot be made the means by which a lien creditor may be bereft of his lien through fraud or unfair divisions resulting from agreements between the co-tenants designedly or inadvertently entered into to the injury of the lien creditor.

In the case at bar the circumstances in which the Baltzell mortgage became involved in the partition proceedings preclude the idea of any design on the part of the tenants in common and Mr. Dekle to shift the mortgage then owned by Mr. Dekle from any portion of the land allotted to any of the tenants in common except so much of it as might be allotted to the Milton heirs. The decree of partition was made "according to the amicable agreement" of the parties in the partition suit. The agreement was made July 17, 1922, nearly one year and five months before the date of the decree. Owelty of partition was due from D. P. and

W. J. Daniel to the Milton heirs and D. P. and W. J. Daniel were to account for rents collected and expenses paid out and the balance, if any, should be paid upon "notes outstanding for borrowed money" and then "each share assume one-third of the debt remaining unpaid."

At that time, the date of the decree, the debts due to M. L. Dekle by D. P. and W. J. Daniel and secured by mortgages executed by them were so far as the record disclosed the only debts carrying a lien upon the property partitioned. The mortgages had not been executed when the agreement was signed although the agreement was written into the decree and became part of it. So Mr. Dekle appeared to be the only creditor whose claim was secured by mortgage liens. Prompted by the belief, so his answer states, that the mortgage liens held by him would be shifted to the parcels allotted to the mortgagors respectively and at the request of the Milton heirs he executed a release of the D. P. and W. J. Daniel mortgages in so far as they appeared to be liens upon the lands allotted to the Milton heirs.

His answer avers that all the parties understood that the lien of the mortgages shifted to the lands allotted to the mortgagors respectively. Yet Mr. Dekle executed no release of the D. P. Daniel mortgage as to lots allotted to W. J. Daniel, nor did he release the W. J. Daniel mortgage as to the land allotted to D. P. Daniel. He deemed it to be prudent to release the liens of both mortgages as to lands allotted to the heirs of Milton but did not pursue that course as to the lands allotted to D. P. and W. J. Daniel respectively. Mr. Dekle advised and counselled the tenants in common in the matter of their agreement and knew of the suit for partition. After the decree he sold the D. P. Daniel mortgage to Mrs. Baltzell

but he did not advise her that the mortgage either by agreement, understanding between the parties, or by decree, was a lien only on the land allotted to D. P. Daniel which was covered by the mortgage.

The Chancellor in the Wester suit, to which W. J. Daniel as well as D. P. Daniel were parties and which was begun in July, 1928, to enforce a mortgage executed by D. P. Daniel upon property in Marianna allotted to him in the partition suit, adjudged the Baltzell mortgage to be a lien only on a one-third undivided interest of D. P. Daniel in the property. The decree was binding upon W. J. Daniel and was equivalent to a decision that the mortgage of D. P. Daniel to Dekle then held by Mrs. Baltzell was a lien upon a one-third interest in the lands allotted to W. J. Daniel. Mr. Dekle says that he is not bound by that decree as he was not a party to the suit, but his mortgagor was bound by it and the decree becomes the law of the case in so far as it affects the lien of the D. P. Daniel mortgage upon lands allotted to W. J. Daniel in the partition suit, and as Mr. Dekle was friend, counsellor and advisor to the tenants in common and creditor of two of them he should not be heard to complain that the practical construction given by him to the decree in partition was afterwards adopted by the court in the Wester foreclosure, especially in view of the circumstance that he sold the D. P. Daniel mortgage to one who believed, as she must have after inspecting the record of the release to the Milton heirs only, that the lien of the mortgage had not shifted from the lands allotted to W. J. Daniel.

Mr. Dekle is practically the only person benefitted by the decree in this suit, as he holds mortgages upon the lands allotted both to W. J. and D. P. Daniel, and benefitted his own situation when he transferred the D. P. Daniel mort-

gage to Mrs. Baltzell upon the theory which the court afterwards adopted in the Wester foreclosure suit and which he practically adopted when he executed a release of the D. P. Daniel mortgage as it applied only to land allotted to the Milton heirs. Mr. Dekle should not approbate and reprobate in relation to the same transaction. He cannot be heard to renounce a position which he practically assumed, as the record discloses, when he sold the mortgage to Mrs. Baltzell, when by such renunciation he benefits himself to the injury of his assignee, Mrs. Baltzell.

The reason for the rule that a decree in partition transfers the lien of a mortgage executed by one co-tenant upon his undivided share to the land allotted to him in the partition suit is that any tenant in common might otherwise have the power of defeating an effectual partition by executing a mortgage at any time before the execution of the decree making partition. See Loomis v. Riley, 24 Ill 307, text 310. Also that the interest of a co-tenant and his right to a partition is superior to the lien holder of a mortgage upon an undivided share. In the case at bar, however, the only interest that could have been injured by a contrary rule was that of the Milton heirs and they were completely cared for by the release to them of the D. P. and W. J. Daniel mortgages held by Mr. Dekle. Both Mr. D. P. and Mr. W. J. Daniel appeared not to have objected to that special release to the Milton heirs and Mr. Dekle was the beneficiary of the implied application of the contrary rule as applicable to the interests of D. P. and W. J. Daniel, and, as stated, benefitted by it when he assigned the D. P. Daniel mortgage to Mrs. Baltzell.

As to the proposition that the D. P. Daniel mortgage now held by Mrs. Baltzell shifted by the partition decree to the two hundred and forty acres of land lying between Mar-

ianna and Blue Springs allotted to D. P. Daniel but not covered by the mortgage executed by him to Dekle, the rule is contrary to the theory. See 47 C. J. 614.

So we are of the opinion that the decree from which the appeal was taken is erroneous. It is therefore reversed with directions to proceed in the cause in accordance with the views expressed in this opinion.

Davis, C. J., and Whitfield, Terrell, Brown and Buford, J. J., concur.